IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JANE NWANNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:24-cv-1587 (LMB/WBP) |
| ) | |
| ETHIOPIAN AIRLINES GROUP, ) | |
| ) | |
| Defendant. ) | |
| ) | |

MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. See [Dkt. No. 46]; [Dkt. No. 50].[1] For the reasons discussed below, the defendant's motion for summary judgment will be granted, and all of the plaintiff's motions will be denied.

I.

On February 28, 2024, Texas resident and pro se plaintiff Jane Nwanne ("Nwanne" or "the plaintiff"), proceeding in forma pauperis, filed a civil action in the Southern District of Texas against defendant Ethiopian Airlines Group ("Ethiopian Airlines" or "the defendant"), a public enterprise owned by the Federal Democratic Republic of Ethiopia. See [Dkt. No. 2]; [Dkt. No. 20] at 2. The nine-count Complaint essentially alleges that Ethiopian Airlines failed to deliver to Nwanne two pieces of cargo that her sister had shipped from Nigeria to her via the airline, and improperly insisted that Nwanne pay a $185 import service charge before retrieving the cargo. See [Dkt. No. 2]. According to the Complaint, Ethiopian Airlines' actions constituted breach of contract (Count 1), breach of contractual obligations/duty (Count 2), fraud and deceit (Count 3), violation of the Washington State Consumer Protection Act (Count 4), unjust enrichment (Count 5), breach of the implied covenant of good faith and fair dealing (Count 6),

---

[1] In addition, the plaintiff has filed a Motion to Compel Damages for Bad Faith and Litigation Misconduct and a Motion for Sanctions for Spoilation of Evidence. See [Dkt. Nos. 55, 57].

negligence and misrepresentation (Count 7), intentional or reckless infliction of emotional distress (Count 8), and that such actions entitled Nwanne to punitive damages (Count 9). See id. at 6–15. The Complaint demanded a jury trial and $1,321 in compensatory damages, plus punitive damages, statutory damages, restitution for unjust enrichment, declaratory relief, injunctive relief, attorney's fees, costs, and interest. Id. at 20–21.

On September 9, 2024, Ethiopian Airlines' motion to transfer venue to this district was granted and this civil action was transferred to this Court. See [Dkt. No. 17]. Ethiopian Airlines filed an Answer and Counterclaim, alleging that Nwanne breached a contract with the airline by refusing to pay the $185 import service charge plus tax when the cargo arrived at Washington Dulles International Airport ("IAD") and refusing to take delivery of the cargo despite multiple requests by Ethiopian Airlines that she do so. [Dkt. No. 20] at 19. The Counterclaim states that the storage fees for the cargo had reached $38,665 by May 20, 2024—more than eight months after it had arrived at IAD. Id. Despite Ethiopian Airlines offering to waive these storage fees and to waive the import service charge, Nwanne did not pick up the luggage at IAD. Id. The Counterclaim seeks $38,480 or more in storage fees, $185 for the unpaid import service charge, attorney's fees, costs, and interest. Id. at 20.

On March 12, 2025, Ethiopian Airlines filed a Motion for Summary Judgment, in which it contended that it is not liable as a matter of law because Nwanne's claims are preempted by the Montreal Convention and, to the extent the claims are not preempted, the evidence in the record fails to support any of them. See [Dkt. No. 46]. Nwanne filed her own Motion for Summary Judgment on March 12, 2025, claiming that she is entitled to judgment as a matter of law because Ethiopian Airlines has admitted that Nwanne and her sister paid the shipping fees for her cargo, but nevertheless continued to withhold the cargo from her. See [Dkt. No. 50].

II.

The following facts are uncontested. Nwanne took a roundtrip journey from her home in the Southern District of Texas to Enugu, Nigeria to visit her sister in September 2023. See [Dkt. No. 2] at 4; [Dkt. No. 48] ("Yared Decl.") at 3. On September 12–13, 2023, Nwanne flew from Texas to IAD on a separate airline, and then flew on Ethiopian Airlines from IAD to Akanu Ibiam International Airport in Enugu, Nigeria ("Enugu Airport"), with a connection at Bole International Airport in Addis Ababa, Ethiopia. See Yared Decl. at 3. On September 27, 2023, as part of her return trip, Nwanne flew on Ethiopian Airlines from Enugu Airport to IAD, once again connecting via Addis Ababa. See id. It was at the beginning of this return trip, when Nwanne was checking her luggage at Enugu Airport, that the dispute between Nwanne and Ethiopian Airlines arose. See id. at 3–5; [Dkt. No. 2] at 4.

Ethiopian Airlines' baggage policy only permitted Nwanne to bring onboard two pieces of checked baggage with a maximum weight of 23 kilograms each. See Yared Decl. at 4; Plaintiff Dep. 58:14–60:16. Nwanne sought to check three pieces of luggage at Enugu Airport, each of which was over this weight limit. See [Dkt. No. 2] at 4; Plaintiff Dep. 77:10–11, 82:20–83:12. After being rebuffed by Ethiopian Airlines staff, Nwanne redistributed her personal items between her bags to put two of the bags within the weight limit, and was permitted to check those two bags without paying a fee. See [Dkt. No. 2] at 4; Yared Decl. at 5; see also Plaintiff Dep. 85:16–17, 87:19–88:2. Ethiopian Airlines offered to check the third overweight piece of Nwanne's luggage for a $225 fee, in accordance with company policy. See [Dkt. No. 2] at 4; Yared Decl. at 5; Plaintiff Dep. 78:2–3. By the time Nwanne agreed to pay the $225 fee and check this excess bag, she had missed the airport's checked bag cutoff time of one hour before departure. See Yared Decl. at 5; see also Plaintiff Dep. 102:3–13. Because Nwanne's third bag could not be checked, Ethiopian Airlines offered to ship its contents to IAD via its cargo services, however, Ethiopian Airlines was not able to ship the third bag as cargo immediately on

September 27, 2025. See Yared Decl. at 5–6. As a result, Nwanne's sister left the airport with the third bag. See id. at 6.

On October 11, 2023, about two weeks after Nwanne had returned to the United States, her sister arranged for the contents of the bag to be shipped from Enugu Airport to IAD via Ethiopian Airlines' cargo service for a $269.56 fee. See id. at 7; Plaintiff Dep. 144:6–8, 146:7–10. As a courtesy, Ethiopian Airlines paid about $25 to cover the cost of Nwanne's sister's taxi to Enugu Airport and an additional $25 to cover Enugu Airport's ground handling charges. Yared Decl. at 7–8; see also Plaintiff Dep. 162:15–163:12. The cargo, which was shipped as two packages to reduce cost, weighed 53 kilograms and contained clothing, documents, medicine, and food—including flour, nuts, seeds, beans, and soup. See [Dkt. No. 20] at 18; Yared Decl. at 6; Plaintiff Dep. 166:3–8.

Ethiopian Airlines' general practice is to notify its customers that all cargo arriving in the United States is subject to an import service charge that must be paid by the consignee (i.e., the recipient of the cargo) at the U.S. airport, and its terms and conditions state that "rates and charges apply only from airport to airport and do not include any ancillary service given by carrier in connection with the air carriage." Yared Decl. at Ex. H Art. 5.3; see also id. at 8. In this instance, an Ethiopian Airlines customer service representative also notified Nwanne's sister that "[c]ustoms clearance at USA is needed by consignee," although she did not understand that an additional payment would also be required. See [Dkt. No. 48-10] at 9. The import service charge at IAD for the cargo was $185 plus tax, or approximately $202. See [Dkt. No. 2] at 4–5; Yared Decl. at 8. Nwanne claims that neither she nor her sister were verbally notified of this fee, and Ethiopian Airlines did not produce any evidence to show that either Nwanne or her sister were explicitly notified of the fee in writing before the cargo arrived at IAD. See Plaintiff Dep. 166:9–168:20.

4

In mid-October, Nwanne, who was living in Texas, sent Camillus Ugwu—her friend who lived in the D.C. area—as the designated consignee to pick up the cargo from IAD, but he was unsuccessful because the cargo was still going through customs clearance. See Plaintiff Dep. 167:21–168:6, 182:11–184:10. The cargo became ready for pickup on October 17, 2023. See id. at 167:14–15. Cargo stored in the IAD warehouse that is not retrieved by the consignee or his or her agent is subject to a daily storage fee of $185, which Ethiopian Airlines offered to waive for the first two days after the cargo became ready for pickup. See Yared Decl. at 9; Plaintiff Dep. 184:17–186:14. The cargo, however, was never retrieved from the IAD warehouse by Nwanne or the consignee, who refused to pay the import service charge. See Yared Decl. at 9. After sitting in the warehouse for months and costing Ethiopian Airlines tens of thousands of dollars in storage fees, the cargo was destroyed by Ethiopian Airlines' ground handling services contractor sometime after June 2024 in accordance with the airline's Conditions of Carriage because it had not been picked up and because the food that it contained had begun to deteriorate and emit an odor, thereby posing a health and safety risk. See id. at 9; [Dkt. No. 48-8] at 7 (Conditions of Carriage) (stating that the carrier may destroy cargo if it is not picked up by the consignee after a certain period). According to Nwanne, it would have cost her $1,119 to travel roundtrip from Texas to IAD to retrieve the cargo. See [Dkt. No. 2] at 5.

III.

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute "will not defeat an otherwise properly supported motion for summary judgment;" there must "be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Phoenix Savings &

Loan v. Aetna Casualty & Surety Co., 381 F.2d 245, 249 (4th Cir. 1967). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018).

The moving party must make a prima facie showing that it is entitled to summary judgment, and has the initial burden of informing the Court of the legal basis for its motion and pointing to the relevant portions of the pleadings, depositions, discovery responses, and affidavits which establish that there is no genuine issue of any material fact. See Celotex Corp., 477 U.S. at 323. "Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party 'must show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence.'" Lewis v. Inova Health Care Servs., 2024 WL 4438474, at *3 (E.D. Va. Oct. 7, 2024) (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). All facts must be viewed, and all reasonable inferences drawn, in the light most favorable to the nonmoving party. Lettieri v. Equant Inc., 478 F.3d 640, 642 (4th Cir. 2007). When there are cross-motions for summary judgment, a court "consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

Summary judgment is not a "disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp., 477 U.S. at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

6

IV.

Ethiopian Airlines' primary argument is actually a legal argument—that summary judgment should be granted because Nwanne's state law claims are preempted by the Montreal Convention. The Montreal Convention applies to "all international carriage of persons, baggage or cargo performed by aircraft for reward." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13,038 (2000), reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) ("Montreal Convention") Art. 1.1. The United States, Ethiopia, and Nigeria are all parties to the Montreal Convention, which governs the cargo dispute at issue. See Papaiyawala v. Saudi Arabian Airlines, 2016 WL 11668945, at *3 (E.D. Va. Apr. 15, 2016). The Convention requires that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention Art. 29; see also We CBD, LLC v. Planet Nine Priv. Air, LLC, 109 F.4th 295, 303 (4th Cir. 2024) (quoting Article 29 and stating that "the Montreal Convention provides the exclusive remedy for claims within its scope").

Given the uncontested facts described above, this civil action is squarely covered by the Montreal Convention, which means that all of Nwanne's claims are preempted. Specifically, all of the claims center upon the international carriage of baggage or cargo performed by aircraft for reward. Montreal Convention Art. 1.1. Nwanne asserts that she was harmed by Ethiopian Airlines' refusal to let her bring a third piece of baggage onboard her international trip from Nigeria to the United States, its requirement that she pay costs associated with shipping that baggage as cargo from Nigeria to the United States, its failure to ship the cargo directly to Nwanne in the Southern District of Texas, and its decision to destroy the cargo when it was not picked up at IAD after several months. Because the transactions and occurrences underlying these alleged injuries fit within the scope of the Convention, the Convention exclusively governs

the rights and liabilities of the parties with respect to this civil action. See We CBD, LLC, 109 F.4th at 303; El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 167–176 (1999). Accordingly, Nwanne's claims—for breach of contract, breach of contractual duty, breach of the implied covenant of good faith and fair dealing, fraud and deceit, violation of the Washington Consumer Protection Act, unjust enrichment, negligent misrepresentation, and intentional or reckless infliction of emotional distress—each of which is grounded in state law, are preempted by the Montreal Convention and do not provide her with grounds for relief.

Even if Nwanne had brought her claims under the Montreal Convention, on this record those claims would fail. As an initial matter, some of the relief that Nwanne seeks is not permitted under the Convention. The Montreal Convention precludes recovery for mental anguish and emotional distress that do not result from physical injury, and there is no allegation of physical injury here. See Papaiyawala, 2016 WL 11668945, at *3; Hamblin v. British Airways PLC, 2010 WL 11626906, at *6 (E.D.N.Y. Aug. 12, 2010) ("[I]t has become settled law that mental injuries are compensable [under the Montreal Convention] only if they are caused by physical injuries."); Ehrlich v. American Airlines, Inc., 360 F.3d 366, 400 (2d. Cir. 2004). The Convention also prohibits punitive damages for baggage and cargo claims. See Montreal Convention Art. 29 ("In the carriage of passengers, baggage and cargo . . . , punitive, exemplary or any other non-compensatory damages shall not be recoverable."); Asiedu-Ofei v. S. Afr. Airlines, 2016 WL 8229875, at *1–*2 (E.D. Va. June 17, 2016).

As for the less than $1,400 in compensatory damages that Nwanne seeks for "travel expenses, additional fees, and costs related to the retrieval and handling of her" cargo, such damages would have to be sought under Article 19 of the Convention. This article provides that Ethiopian Airlines, as an air carrier, "is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo," except "for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the

8

damage." Montreal Convention Art. 19. Here, Nwanne's damages resulted from her not understanding the agreement that her sister had entered into with Ethiopian Airlines—which required the consignee to pay the cargo's import service charge at IAD—and from her refusing to pay the import service charge. Indeed, the evidence shows that Ethiopian Airlines "took all measures that could reasonably be required to avoid [any] damage" that was caused by the delay in the luggage being picked up. Montreal Convention Art. 19. The airline reimbursed the shipper of the cargo, Nwanne's sister, for her transportation costs to Enugu Airport, paid the ancillary charges imposed by the ground baggage handler in Nigeria, divided the cargo into two pieces to reduce freight charges, waived the initial two days of cargo storage fees at IAD, notified Nwanne's sister of the potential for ancillary charges such as the import service charge, and ultimately even agreed to waive the $185 import service charge. See Plaintiff Dep. 161:5–163:10; Yared Decl. at 6–9 & Ex. K. To the extent that Nwanne was damaged by her refusal to pay the import service charge and pick up the cargo upon its arrival at IAD, such damages are unrecoverable under the Montreal Convention. See also Montreal Convention Art. 20 (protecting airlines from liability "to the extent that [the plaintiff's] negligence or wrongful act or omission caused or contributed to the damage").

In sum, Ethiopian Airlines has met its burden to show that it is entitled to judgment as a matter of law on all Nwanne's claims, and nothing in Nwanne's motion for summary judgment undermines this conclusion.[2]

### V.

Nwanne has also filed a Motion to Compel Damages for Bad Faith and Litigation Misconduct and a Motion for Sanctions, in which she challenges Ethiopian Airlines' destroying

---

[2] Because Ethiopian Airlines has agreed to drop its Counterclaim against Nwanne if it prevailed on summary judgment, see [Dkt. No. 47] at 26, the Court will dismiss that claim without analyzing it.

the cargo at issue and failing to disclose that destruction until months afterwards, despite having engaged in pre-litigation settlement negotiations with Nwanne in the interim. See [Dkt. No. 55] at 1; [Dkt. No. 57]. Nwanne identifies the cargo as "material evidence" with "central relevance to the ongoing" litigation, and requests that, in accordance with Federal Rule of Civil Procedure 37(e), the Court sanction Ethiopian Airlines for destroying it. See [Dkt. No. 57] at 1. These motions will be denied because, as discussed above, the evidence of the cargo having become a health and safety hazard after not being picked up by the consignee or Nwanne for eight months was uncontested, and the Conditions of Carriage that governed the cargo shipping agreement between Ethiopian Airlines and the Nwanne's sister make clear that Ethiopian Airlines had the right to destroy any cargo that had not picked up for more than 30 days after the consignee was notified of its arrival. See [Dkt. No. 48-8] at 7. Nwanne also does not explain why having access to the cargo would serve as relevant evidence in proving any of her claims because there is no material disputed fact involving the cargo's contents, weight, or other physical attributes.

Indeed, it was Nwanne, not Ethiopian Airlines, who failed to comply with the Federal Rules of Civil Procedure during discovery. Nwanne did not appear at multiple scheduled in-person depositions, did not provide timely notice of these nonappearances to Ethiopian Airlines' counsel, and refused to pay the associated deposition cancellation fees. See Plaintiff Dep. 8:5–17:5. When Nwanne finally did appear at a deposition via Zoom, she refused to answer basic questions about her educational background and employment. See, e.g., id. at 26:13–29:18, 32:21–33:7. At that deposition, Nwanne admitted that she had an attorney "look over" and "review" her Complaint "to catch errors that [she] couldn't catch," but refused to name the attorney despite being informed by Ethiopian Airlines' counsel of Local Rule 83.1's requirement that pro se plaintiffs must identify attorneys who assist them. Id. at 36:16–42:4.

10

VI.

For the foregoing reasons, the defendant's Motion for Summary Judgment [Dkt. No. 46] will be granted, and the plaintiff's Motion for Summary Judgment [Dkt. No. 50], Motion to Compel Damages [Dkt. No. 55], and Motion for Sanctions [Dkt. No. 57] will be denied by an order to be issued with this Memorandum Opinion.

Entered this 8th day of July, 2025.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

11